## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WADE VOLZ** | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **GENERAL MOTORS, LLC and** | : | |
| **THE GENERAL MOTORS LIFE AND** | : | |
| **DISABILITY BENEFITS PROGRAM** | : | |
| **FOR SALARIED EMPLOYEES** | : | |
| *Defendants*. | : | **No. 22-cv-3471** |

### MEMORANDUM

**KENNEY, J.**                                                    **October 5, 2023**

Plaintiff Wade Volz ("Plaintiff") brings this action against Defendants General Motors, LLC ("GM") and The General Motors Life and Disabilities Benefits Program for Salaried Employees (together, the "Defendants"), alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA") that resulted in denial of Plaintiff's life insurance claim on his ex-spouse.

Presently before the Court are cross-motions for summary judgment. ECF Nos. 23, 24. For the reasons set forth below, Plaintiff's Motion for Summary Judgment (ECF No. 24) is denied, and Defendants' Motion for Summary Judgment (ECF No. 23) is granted. Appropriate Orders will follow.

### I.      BACKGROUND

Plaintiff worked for GM beginning in November 1999. ECF No. 1 ¶ 7. As a benefit of his employment, he enrolled himself and his ex-spouse, Tina Volz ("Ms. Volz"), in GM's employee benefits plan which included voluntary dependent coverage in a group variable life insurance plan,

in the amount of $150,000. *Id.* ¶¶ 8–9; ECF No. 22, Stipulation of Material Facts Not in Dispute ("SMF") ¶ 13. From November 1999 through Ms. Volz's death, GM automatically deducted premium payments from Plaintiff. ECF No. 1 ¶ 11.

Metropolitan Life Insurance Company ("MetLife") insured the life insurance benefits and GM was the named Plan Administrator. ECF No. 22, SMF ¶¶ 9–10. As the Plan Administrator, GM had "discretionary authority to construe, interpret, and apply the terms of the Plan, determine eligibility, and modify or amend the Life Plan, among various other responsibilities." *Id.* ¶ 11. GM admits that as Plan Administrator it was, at times, a fiduciary pursuant to ERISA. *Id.* ¶ 12.

Relevant documents of the "Life Plan" include the Wrap Document and Group Variable Universal Life Insurance Certificate of Coverage. *Id.* ¶ 2. The Certificate of Coverage states that "Spouse" means the employee's "lawful Spouse," and that a "Dependent" under the Dependent Life Rider includes only the employee's "Spouse" and children up to a certain age. *Id.* ¶¶ 4–5. The Life Plan states that "Dependent Life Benefits will end . . . the date a Dependent ceases to be a Dependent as defined." *Id.*  ¶ 8. The Life Plan also states that once the Dependent is no longer eligible for coverage, the employee has 31 days to submit a written application to MetLife to convert the dependent coverage from the Life Plan to an individual life insurance policy. *Id.* ¶ 16.

On February 10, 2011, MetLife mailed a notification to Plaintiff stating he had access to the "MyBenefits Web site" which allowed employees to review all information about the life benefits and perform certain service functions related to the life benefits, by either calling an "800" phone number or logging into the website. *Id.* ¶ 14.

On January 9, 2013, Plaintiff and Ms. Volz divorced. *Id.*  ¶ 15. Plaintiff alleges that following the divorce he "promptly" called GM's Human Resource department to notify them of the divorce. ECF No. 1 ¶ 17. Plaintiff alleges that during the call, he was told he could maintain

the insurance benefits for Ms. Volz. *Id.* ¶ 18. Plaintiff elected to terminate Ms. Volz's health and dental insurance, and to continue Ms. Volz's life insurance coverage. *Id.* Plaintiff alleges that GM did not advise Plaintiff of the need to complete a conversion or portability application or take any other affirmative action to maintain Ms. Volz's life insurance coverage, other than paying the premium. *Id.* Plaintiff continued to make the required premium payments which GM automatically deducted from Plaintiff's pay until Ms. Volz's death. *Id.* ¶ 19. Plaintiff believed that the life insurance coverage for Ms. Volz continued based on his call with GM Human Resources and the automatic withdrawal of premium payments. *Id.* ¶ 20. Plaintiff alleges that at no point after Plaintiff notified GM of his divorce did GM give Plaintiff any indication that his coverage was not effective or that Plaintiff needed to take further action. *Id.* Plaintiff asserts that had he been properly informed he would have submitted the required application. *Id.* ¶ 29.

On November 26, 2020, Ms. Volz died. ECF No. 22, SMF ¶ 17. On December 11, 2020, Plaintiff filed a claim seeking benefits under the Life Plan. *Id.* On January 22, 2021, MetLife denied Plaintiff's claim for dependent spouse benefits under the Life Plan, finding that Ms. Volz's eligibility as a dependent spouse ended when divorce was final in 2013 and that coverage was not properly converted within the 31-day period. *Id.* ¶ 18.

On March 31, 2021, Plaintiff requested an administrative appeal of the claim denial. *Id.* ¶ 19. On July 9, 2021, as part of that appeal, Plaintiff alleged that he called "GM's Benefits Department" and was informed he could maintain dependent spouse coverage despite the divorce. *Id.* ¶ 20. In response to this allegation, GM and MetLife reviewed their phone records. *Id.* ¶ 21. MetLife confirmed that there was no prior notice of the divorce in their system. *Id.* ¶ 22. Additionally, GM and MetLife had no record of a call regarding Plaintiff's divorce. *Id.* ¶¶ 22–23,

3

26. In addition, GM confirmed that if an employee called the "800" number which is considered "GM Benefits," the employee should have been transferred to the insurer, MetLife. *Id.* ¶ 24.

As a part of the same appeal, MetLife determined that Plaintiff was sent mailings in 2018 and 2020 based on his election of dependent spouse coverage and that the mailings informed the employee that the employee needed to contact MetLife if the employee was not married so the election could be cancelled and any premium paid could be refunded. *Id.* ¶ 29. On August 27, 2021, MetLife completed the administrative appeal and upheld denial of the benefits based on a finding that Ms. Volz's eligibility ended when divorce was final. *Id.* ¶ 30. MetLife sent a premium refund to Plaintiff. *Id.* ¶ 33.

On August 27, 2021, Plaintiff submitted another letter to MetLife seeking a second administrative appeal to review the claim denial. *Id.* ¶ 34. On January 18, 2022, MetLife completed its second administrative appeal of Plaintiff's claim. *Id.* ¶ 40. MetLife again determined that the claim was not payable and that a premium refund was previously sent. *Id.* ¶ 41. MetLife further confirmed that Plaintiff had exhausted his administrative remedies and that no further appeals would be considered. *Id.* ¶ 42.

On June 1, 2023—nine months after Plaintiff commenced this action—Plaintiff signed a Separation and Release Agreement ("SRA") which GM provided to Plaintiff. *See id.* ¶ 49. The SRA is four pages long. ECF No. 21-6. The SRA states Plaintiff "releases, waives, and forever discharges [General Motors LLC] and all of its subsidiaries, affiliates, and related entities, and all of their respective agents, employees, officers, directors, shareholders, members, managers, employee benefit plans and fiduciaries, insurers, successors, assigns, the Plan, the Plan sponsor, and the Plan administrator." ECF No. 22, SMF ¶ 50.

The SRA also states that Plaintiff agrees to release "all claims, liabilities, actions, grievances, demands, obligations, agreements, or proceedings of any kind, individually or as part of a group action, whether known or unknown, that arise out of, relate to, or are connected with" Plaintiff's employment, his compensation and benefits, his termination of employment, any alleged discrimination, harassment, retaliation, or failure to accommodate claims, and any claims or disputes based on events or circumstances occurring up to and including the date Plaintiff signed the Agreement. *Id.* ¶ 51.

The agreement further states that Plaintiff agrees to release and forever discharge claims, liabilities, actions, demands, obligations, and proceedings, related to numerous employment laws including the Employee Retirement Income Security Act ("ERISA"). *Id.* ¶ 52.

The SRA states that Plaintiff has the right to revoke within seven calendar days after signing it. *Id.* ¶ 56, ECF No. 21-6 at 6, Section E. Plaintiff avers that within seven days of June 1, 2023, GM informed Plaintiff that it was making a change to the vacation payment provision of the Voluntary Separation Plan. ECF No. 26, Plaintiff's Stipulated Facts ¶ 50. Plaintiff further avers that he called GM's Human Resources department within the seven-day revocation period to revoke his signature and was informed that his only option was to proceed with the Agreement or quit. *Id.* ¶ 51. Defendants state they were unaware of any attempt by Plaintiff to revoke the Voluntary Separation Plan. ECF No. 27, Defendants' Statement of Additional Facts ¶ 11.

## II.   **PROCEDURAL HISTORY**

Plaintiff commenced this action on August 30, 2022, alleging a breach of fiduciary duties under ERISA, 29 U.S.C. § 1132(a)(3) (Count I) and a right to attorneys' fees under 29 U.S.C. § 1332(g) (Count II). ECF No. 1. Plaintiff requests compensatory damages in the amount of $150,000 and attorneys' fees, costs, and other recoverable expenses of litigation. ECF No. 1 at 12.

5

Plaintiff and Defendants moved for summary judgment on August 2, 2023. ECF Nos. 23, 24. Plaintiff and Defendants filed responses in opposition to the motions on September 1, 2023. ECF Nos. 34, 36.

### III.   <u>LEGAL STANDARD</u>

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Indeed, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Owens Corning*, 679 F.3d 101, 105 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see also* Fed. R. Civ. P. 56(c).

The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252. The non-movant opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

When determining the existence of a genuine issue of material fact, a court must "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court need only decide whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

## IV.   <u>DISCUSSION</u>

For the reasons set forth below, Defendants are entitled to summary judgment, and Plaintiff's motion shall be denied in full.

**A.  Plaintiff cannot establish the required elements for a breach of fiduciary duty under ERISA.**

A breach of fiduciary duty under ERISA requires the Plaintiff to prove the "employer, acting as a fiduciary, made a material misrepresentation that would confuse a reasonable beneficiary about his or her benefits, and the beneficiary acted thereupon to his or her detriment." *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001) (citing *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 492 (3d. Cir. 2001)). Here, Plaintiff is unable to show that Defendants breached their fiduciary duty under ERISA.

As an initial matter, the parties disagree as to whether GM acted as a fiduciary at the time of the alleged misrepresentation. A person is a fiduciary with respect to a plan to the extent he (1) "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority to control respecting management or disposition of its assets"; (2) "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so"; or (3) "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). The parties stipulated to the fact that as Plan Administrator, GM "has discretionary authority to construe, interpret and apply the terms of the Life Plan, determine eligibility, and modify or amend the Life Plan" (ECF No. 22, SMF ¶ 11) and that GM, as Plan Administrator, was "at times" a fiduciary. *Id.* ¶ 12. Defendants argue that the Human Resources employee on the alleged phone call with Plaintiff did not have the authority to act as a fiduciary, and that the employee was merely performing administrative functions. ECF No. 34 at 17.

Defendant's position is that there was no fiduciary relationship between Plaintiff and the GM employee on the alleged phone call which would compel the finding that there was no

fiduciary duty that could have been breached. ECF No. 25 at 15–17. However, Plaintiff's position is that there was a fiduciary relationship at the relevant time. ECF No. 28 at 13–14; ECF No. 36 at 9.

A plan administrator is liable for statements made by non-fiduciary agents who act within their apparent authority as agents of the plan administrator. *Taylor v. Peoples Natural Gas Co.*, 49 F.3d 982, 988 (3d Cir. 1995). A plan administrator violates its fiduciary obligations when the administrator's "employees on whom plan participants reasonably rely for important information and guidance" makes misrepresentations. *Id.* (citing *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir. 1993)). In fact, the Third Circuit affirmed the fiduciary status of an unnamed human resources staff member who counseled plaintiffs about benefits. *In re Unisys Corp. Retiree Med. Benefits Erisa Litig.*, No. CIV.A. 03-3924, 2007 WL 2071876, at *7 (E.D. Pa. July 16, 2007) (emphasis added), *aff'd sub nom. In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220 (3d Cir. 2009).

Still, even assuming Defendants were fiduciaries at the relevant time, Plaintiff cannot establish the required elements for a breach of fiduciary duty under ERISA because Plaintiff cannot show that Defendants breached a fiduciary duty or that any alleged misrepresentation was material. First, Defendants administered Plaintiff's claim according to the plan. Further, it was unreasonable for Plaintiff to rely on the alleged phone conversation with GM Human Resources and the continued deductions to pay for the plan's premiums. Moreover, Plaintiff had access to Plan documents which included the relevant information on dependent spouse coverage, and under ERISA, the written language of the Plan is paramount.

In discharging their duties, fiduciaries are "required to abide by the plan documents" *Bicknell v. Lockheed Martin Grp. Ben. Plan*, 410 F. App'x 570, 575-76 (3d Cir. 2011) (citing 29

U.S.C. § 1104(a)(1)(D) (finding that employer did not breach fiduciary duties when it acted in accordance with the insurance plan documents); *see also Kennedy v. Plan Adm'r for Dupont Sav. & Inv. Plan*, 555 U.S. 285, 288 (2009) ("A plan administrator is obliged to act in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA].") (Internal quotation marks omitted). Here, Defendants abided by the plan documents when denying Plaintiff's life insurance claim because Ms. Volz, an ex-spouse, is not considered a "dependent" under the policy. ECF No. 22, SMF ¶ 4–5, 8. To maintain coverage, the Life Plan required that Plaintiff convert the dependent coverage to an individual life insurance policy by submitting a written application to MetLife within 31 days of the divorce. *Id.* ¶ 16. Plaintiff failed to do so.

Moreover, Plaintiff failed to show that the alleged misrepresentation was material—a required element of proving a breach of fiduciary duty. *Daniels,* 263 F.3d at 73. A misrepresentation is material if there is a "substantial likelihood that it would mislead a *reasonable* employee in making a decision regarding his benefits under the ERISA plan." *Id.* (emphasis added). It is the participants' "duty to inform themselves of the details provided in their plans. . . [and] it is unreasonable for a plan participant to rely upon an employer's representation as to the contents of the Plan where the participant is in possession of a plan document containing express terms regarding the subject of the representation." *Bicknell,* 410 F. App'x at 575 (internal citations omitted).

Under ERISA, the written plan documents are the "statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits." *Unisys*, 58 F.3d at 902. When resolving ERISA claims, the written language of the plan supersedes all, including statements made by the employer. *Id.* ("The written terms of the plan documents control and cannot

be modified or superseded by the employer's oral undertakings."); *see also Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1164 (3d Cir. 1990) ("'Congress, in passing ERISA, did not intend that participants in employee benefit plans should be left to the uncertainties of oral communications in finding out precisely what rights they were given under their plan.'") (citations omitted). Therefore, "a participant's reliance on employer representations regarding benefits may never be 'reasonable' where the participant is in possession of a written document notifying him of the conditional nature of such benefits." *Unisys*, 58 F.3d at 908.[1]

The Third Circuit's decision in *Staropoli v. Metro. Life. Ins.* is instructive. There, the plaintiff had a life insurance policy for her husband through her employer. No. 21-2500, 2023 WL 1793884, at *1 (3d Cir. Feb. 7, 2023). Plaintiff later divorced her husband, reenrolled him in the insurance policy and continued to pay premiums on his policy and defendant's Benefits Website listed her husband as a dependent. *Id.* When plaintiff's then-husband died, her claim was denied. *Id.* at *6. The Third Circuit affirmed the district court's decision to grant summary judgment for the defendant, reasoning that it was "unreasonable as a matter of law" for the plaintiff to rely on the website listing and continued withdrawals from her paycheck to pay premiums because "her interpretations of these sources 'cannot be reconciled with the unqualified' plan language." *Id.* at *3 (citing *Unisys*, 58 F.3d at 907).

Here, Plaintiff's claims rest on similar grounds. It is undisputed that Plaintiff was provided documents with information regarding the life insurance plan at issue. ECF No. 22, SMF ¶ 1–2. It is also undisputed that the Plan documents state that to be an eligible "Dependent" the individual

---

[1] To the extent that Plaintiff may argue this was an omission rather than a misrepresentation, the same holds true. A breach of fiduciary duty under ERISA may be based on a misrepresentation or omission. *Unisys*, 579 F.3d at 228. In both scenarios the plaintiff carries the burden to prove the same elements. *Id.*

must be the employee's "Spouse" or child up to a certain age, and that "Spouse" means the employee's "lawful Spouse." *Id.* at ¶ 4–5. The Plan also states that "Dependent Life Benefits will end . . . the date a Dependent ceases to be a Dependent as defined." *Id.* at ¶ 8. Despite the Plan's language, Plaintiff asserts that it was reasonable for him to rely on alleged representations by a GM Human Resources employee and deductions that were taken from his paycheck to pay the plan's premiums. The law is clear that the written Plan statements govern, and that it is unreasonable to rely on oral representations and continued premium payments. It was Plaintiff's duty to inform himself of the details of his plan, including coverage, and he failed to do so.

### B.  Plaintiff's Claim is barred by the Statute of Limitations

Defendants argue that Plaintiff's claim is barred by the statute of limitations. ECF No. 25 at 11–12. First, Defendants argue that claims are barred under 29 U.S.C. § 1113(1)(A) because "the last action which constituted part of the breach" occurred during Plaintiff's alleged phone call to GM's Human Resources in 2013. *Id.* at 11. Second, Defendants argue that Plaintiff's claims are also barred under Section 1113(2) because Plaintiff had "actual knowledge" based on notices that MetLife sent Plaintiff in 2018 which put Plaintiff on notice that Ms. Volz was no longer eligible for coverage. *Id.* at 12. Plaintiff only made arguments related to Section 1113(2), asserting that the claims are not barred because Plaintiff did not have "actual knowledge" until January 22, 2021, when MetLife denied Plaintiff's claim. ECF No. 36 at 6–7.

Statute of limitations is an affirmative defense, and the movant has the burden of proof. *Richard B. Roush, Inc. Profit Sharing Plan v. New England Mutual Life Ins. Co.*, 311 F.3d 581, 585 (3d Cir. 2002). Here, the applicable statute of limitations is set forth in 29 U.S.C. § 1113:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the **earlier** of –

(1) Six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) Three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

That is, "[t]his section creates a general six year statute of limitations, shorted to three years in cases where the plaintiff has actual knowledge of the breach, and potentially extended to six years from the date of discovery in cases involving fraud or concealment." *Ranke v. Sanofi-Synthelabo, Inc.,* 436 F.3d 197, 201 (3d Cir. 2006) (citations omitted). Further, according to the statute, the *earlier* of the provided statute of limitations is controlling. Therefore, 29 U.S.C. § 1113 requires the Court to determine: (1) "the date of the last action which formed a part of the breach [or violation]" and (2) "the date of the plaintiff's actual knowledge of the breach." *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1178 (3d Cir. 1992).

In general, "'time requirements in lawsuits . . . are customarily subject to equitable tolling'" because the injured party often remains ignorant to the harm until it is discovered. *In re Unisys Corp. Retiree Med.* 242 F.3d 497, 504 (3d Cir. 2001) (quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991)). However, when the statute provides for two different time periods, as does Section 1113, "it would be fundamentally inconsistent with the statutory scheme . . . to accept the argument that the six-year period does not begin to run until discovery of the fraud, where the defendant has engaged in no wrongful activity beyond the original fraud on which the plaintiffs' claims are based." *Id.* at 504.

13

### 1. "The date of the last action"

In *Ranke*, the "leading Third Circuit case on the accrual of a fiduciary claim" (*Keen v. Lockheed Martin Corp.*, 486 F. Supp.2d 481, 491(E.D. Pa. 2007)), the Third Circuit concluded that "the date of the last action" was when the employers made the alleged misrepresentation. 436 F.3d at 203. The Third Circuit reasoned that the appellants' complaint did not contain any other allegations of misrepresentations that occurred after that time that were independent and "not mere continuations of the initial misrepresentations that led to the changes of employment." *Id*. Accordingly, "the date of last action" occurred when the defendants allegedly misrepresented pension plan benefits, and the appellants relied on those activities *at the time of the misrepresentation*. *Id.* Further, a plaintiff may not "reset the clock" with an instance of detrimental reliance that occurs after a claim first accrues. *Id.*[2]

Here, the alleged misrepresentation occurred in 2013, and Plaintiff relied on that misrepresentation when he did not convert the dependent life insurance plan to an independent plan. Any argument that the "date of the last action" occurred in 2020 when Plaintiff filed a claim seeking benefits under the Life Plan fails. Plaintiff's filing of a claim in 2020 was a result of the alleged 2013 misrepresentation—in other words, a "mere continuation[] of the initial

---

[2] The Third Circuit in *Ranke* distinguished a prior case, *Unisys*, 242 F.3d 497 (3d Cir. 2001), where "exceptional circumstance[s]" allowed the plaintiffs to argue that the last day of detrimental reliance could be considered "the date of the last action." *Ranke*, 436 F.3d at 203. In *Unisys*, plaintiffs alleged a breach of fiduciary duty under ERISA arising from Unisys' decision to terminate pre-existing medical benefit plans and replace them. 242 F.3d at 499. Under most of the old plans, Unisys paid the premium during the retiree's lifetime and provided continuing benefits for their spouses. *Id.* Under the new plan, retirees were required to make contributions to the premium until they were eventually responsible for the entire premium. *Id.* The court did not determine what "the date of the last action" was because the parties agreed that the date of the misrepresentation was the same as the date of detrimental reliance. *Id.* at 505 n.8.

misrepresentations." *See id.* Plaintiff commenced this action on August 30, 2022, more than six years after the misrepresentation. Therefore, Plaintiff's claim is barred under § 1113(1)(A).[3]

## 2. "Actual knowledge"

Section 1113(2) requires "actual knowledge," a "high standard" which the Third Circuit interprets "stringently." *Richard B. Roush, Inc. Profit Sharing Plan*, 311 F.3d at 585. Section 1113 requires the court to engage in a two-step inquiry which requires "not only actual knowledge of the facts giving rise to the fiduciary violation but also [requires] actual knowledge that those facts support an action under ERISA." *Id.* (citing *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 787 (3d Cir. 2001)).

"'[A]ctual knowledge of a breach or violation' requires knowledge of all relevant facts at least sufficient to give the plaintiff knowledge that a fiduciary duty has been breached or ERISA provision violated." *Gluck*, 960 F.2d at 1178. Such knowledge may arise from "necessary opinions of experts," "knowledge of a transaction's harmful consequences," "or even actual harm." *Id.* at 1177.

Here, given the "high standard" required for "actual knowledge," Plaintiff likely did not have "actual knowledge" of the breach until his claim was rejected in January 2021. *See Richard B. Roush, Inc. Profit Sharing Plan*, 311 F.3d at 585.

Under § 1113(2), the statute of limitations is three years, or six years in the case of fraud or concealment. 29 U.S.C. § 1113(2). The fraud or concealment provision requires that the fiduciary take "affirmative steps to hide an alleged breach of duty from a beneficiary." *Ranke*, 436

---

[3] The claim here is likely based on a misrepresentation because Plaintiff alleges that Defendants told Plaintiff that he did not need to take any action to maintain coverage for his ex-spouse. However, to the extent that it can be argued that this case is one of an "omission," the claim is similarly barred under § 1113(1)(B).

F.3d at 204. Here, Defendants did not take any affirmative steps to hide the alleged breach as at all relevant times Plaintiff was able to review his plan documents. See ECF No. 22, SMF ¶ 14. Therefore, the fraud or concealment provision does not apply, and the three-year statute of limitations is not extended.  Thus, under § 1113(2), Plaintiff would have had to file the complaint by January 2024, which he did.

However, because 29 U.S.C. § 1113 indicates that the *earlier* of the provided statute of limitations shall be controlling, Plaintiff's claims are barred by the statute of limitations. Here, the earlier of the provided statute of limitations is provided for in § 1113(1)(A), as it would require Plaintiff to have filed his Complaint in 2019. Plaintiff filed his complaint on August 30, 2022, and, therefore, his claim is barred by the statute of limitations.

### C.  The Separation and Release Agreement is a valid waiver.

Defendants argue that the SRA that Plaintiff executed is valid and released Defendants from all claims for the duration of Plaintiff's employment with GM including this present action. ECF No. 25 at 22. Plaintiff argues that the SRA was not valid because (1) Plaintiff did not have 45 days to review the SRA; (2) Plaintiff attempted to revoke the SRA within the provided-for seven days; and (3) Plaintiff did not understand that the SRA would affect this already-pending litigation because it was sent directly to him – not his attorney. ECF No. 36 at 13–14.

To be valid, a waiver must be entered into knowingly and voluntarily. *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 781 (3d Cir. 2007). Generally, in considering whether a separation agreement is valid, the court will use a totality of the circumstances test. *Geraghty v. Ins. Servs. Office, Inc.*, 369 F. App'x 402, 405 (3d Cir. 2010). Specific circumstances to be considered include:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation of the

release before signing it; (4) whether plaintiff knew or should have known her rights upon execution of the release before signing it; (5) whether plaintiff was encouraged to seek, or in fact received, benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the agreement; (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled to by law.

*Id.* (quoting *Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir. 1988)). This is not an exhaustive list, but rather is meant to be illustrative, and the court may also consider evidence of fraud, undue influence or whether enforcement would be against public interest. *Cuchara v. Gai-Tronics Corp*, 129 F. App'x 728, 731 (3d Cir. 2005). Release is an affirmative defense, and the burden of proving such is on the party seeking to enforce it. *Jakimas*, 485 F.3d at 785.

Here, Plaintiff signed the Separation and Release Agreement ("SRA") on June 1, 2023. ECF No. 22, SMF ¶ 49. Applying the totality of the circumstances analysis to the facts of this case, Plaintiff signed the SRA knowingly and voluntarily. First, the release language is clear and specific. The SRA is only four pages long and uses straight-forward language, with separate sections and emphasized headings. The SRA also explicitly states that by agreeing, the "[e]mployee . . . releases and forever discharges the Released Parties from any and all claims, liabilities, actions, demands, obligations, or proceedings of any kind, known or unknown arising under . . .the Employee Retirement Income Security Act (ERISA)." ECF No. 21-6 at 5. Therefore, the language of the SRA is clear and specific.

Second, while the amount of time Plaintiff had to review and sign the SRA is debated, the evidence supports that Plaintiff had at least 45 days to review the SRA, as required by the SRA itself. ECF No. 21-6 at 6, Section D(d). Defendants assert that Plaintiff had access to the SRA document beginning on March 26 and had until June 5 to review and sign (for a total of 71 days). ECF No. 34 at 10–11. Defendants cite to a deposition of Adrienne Dudka, a Global Policy Manager in the Human Resources Department for GM, and emails regarding the SRA that were sent to

Plaintiff which included that the voluntary separation plan was announced to employees, including Plaintiff, on March 9, 2023, that employees would have access to review the SRA starting on March 26, 2023, and that the deadline to sign the SRA was June 5, 2023. ECF No. 32-1; Exhibits C, D.

Conversely, Plaintiff asserts that he received the SRA document in May 2023—Plaintiff does not provide a specific date—and had until June 1, 2023 to review and sign (less than 45 days). ECF No. 36 at 8. However, the only evidence Plaintiff presents as support are his own declarations. *See* ECF Nos. 26 ¶ 46; 21-8 ¶ 3. Thus, no reasonable jury could conclude that Plaintiff had fewer than 45 days to review the SRA.

Next, the SRA instructs participants to seek counsel. ECF No. 21-6 at 6, Section D(c) ("Employee has had the opportunity to seek, and the Company advises Employee in writing to seek, legal counsel prior to signing this agreement."). Yet, despite already having an attorney for this case, Plaintiff did not mention the SRA to his attorney. ECF No. 36 at 14. Plaintiff claims that Defendant GM should have sent the SRA directly to Plaintiff's counsel who was receiving all documents pertinent to this case. *Id.* However, Plaintiff does not cite any support, nor can the Court find support, for Plaintiff's argument that an employer is required to send a voluntary SRA to an employee's attorney for review.

Last, as to the consideration given in exchange for the release and accepted by the employee, Plaintiff received a lump sum payment and health benefits.[4]

---

[4] The Court does not have information as to two of the factors enumerated by the Third Circuit in considering whether a waiver was entered into knowingly and voluntarily: the Plaintiff's education and business experience, and whether there was an opportunity to negotiate the terms. However, as noted, the Court must look at a totality of the circumstances. Here, the circumstances weigh in favor of finding that the SRA was entered into knowingly and voluntarily.

Plaintiff argues that he did not knowingly and voluntarily sign the SRA because (1) Plaintiff did not have 45 days to review the SRA; (2) Plaintiff revoked the SRA within the seven-day revocation period; and (3) Plaintiff did not understand the agreement was waiving the present action. ECF No. 28.

Having already found that no reasonable jury could conclude that Plaintiff had fewer than 45 days to review the SRA, the Court now turns to Plaintiff's argument that he properly revoked the SRA. Plaintiff asserts that he attempted to revoke his acceptance by calling GM Human Resources within the provided-for seven days. ECF No. 36 at 13. However, the SRA provides that the employee may revoke within seven days after signing by sending a *written* revocation to gmhrpolicy@gm.com. ECF No. 21-6 at 6, Section E. Thus, according to the plain language of the SRA, an oral revocation is insufficient. *See id.* Additionally, Plaintiff's assertion that Defendants changed the vacation terms under the agreement and induced his revocation (ECF No. 28 at 9; ECF No. 36 at 13) is irrelevant. The SRA provides that "[e]mployee agrees with the Company that any changes to this Agreement, whether material or immaterial, do not restart the running of the 45 calendar-day consideration period." ECF 21-6 at 6, Section D(g). The SRA also provides that the employee does not need cause to revoke; he can revoke if he merely changes his mind. *See id.* at 6, Section E. Therefore, any disagreement as to the vacation terms is of no consequence regarding revocation. Further, even if Plaintiff did call Human Resources, an oral communication was not a valid revocation under the SRA.

As to Plaintiff's claim that he did not think the waiver would affect this case, "[a]n individual's subjective belief that a release does not waive claims is 'insufficient to defeat summary judgment in the face of clear and unambiguous language.'" *Johnston v. Indep. Blue*

*Cross, LLC*, No. 19-3524, 2021 WL 765771, at *6 (E.D. Pa. Feb. 26, 2021) (quoting *Cirillo*, 862 F.2d at 452)

      Here, the SRA has "clear and unambiguous language," and states claims under ERISA as an example of claims that the participant would waive by signing the agreement. ECF No. 21-6 at 6. Plaintiff had sufficient time to review the SRA. Plaintiff also accepted the benefits under the SRA. Additionally, the SRA clearly provides instruction to consult an attorney, and Plaintiff failed to mention the SRA to his attorney. Therefore, the totality of the circumstances support that Plaintiff knew or should have known that he waived all claims, including those for breach of fiduciary duties under ERISA, against Defendants.

## V.    <u>CONCLUSION</u>

      For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 23) is granted, and Plaintiff's Motion for Summary Judgment (ECF No. 24) is denied. Appropriate Orders will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**
_____
**CHAD F. KENNEY, JUDGE**